JOHN W. FRANKLIN *v.* STATE OF INDIANA.

(No. 676S186. Filed July 21, 1977.)

*Michael J. McDaniel*, of New Albany, for appellant.

*Theodore L. Sendak*, Attorney General, *David L. Steiner*, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with first degree murder of his wife, Ind. Code § 35-13-4-1 (Burns 1975). Over a claim of self defense, he was convicted, in a trial by Jury, of second degree murder, Ind. Code § 35-1-54-1 (Burns 1975), and sentenced to life imprisonment. His appeal presents two issues.

(1) Whether the State's evidence in chief was sufficient, as a matter of law, to overcome the claim of self defense, beyond a reasonable doubt.

(2) Whether the defendant's self-incriminating in-custody statement was admissible in evidence.

The defendant and his wife had a history of marital discord. Both drank excessively. For several days prior to the slaying, they had quarreled over her late hours and the people with whom she associated.

On the evening of the slaying, the two were drinking in a tavern. While he was purchasing drinks at the bar, she left the table where they had been sitting and joined several men

at another table. When he returned from the bar with their drinks, she refused to join him at their table. She later refused him a second time and cursed him. He became angry and started to use physical force. A ruckus followed. The defendant fired three shots with a .38 caliber revolver and fled. One of the shots killed his wife.

## ISSUE I

In support of his self-defense claim, the defendant testified that he had purchased the death weapon two days prior to the killing and in contemplation of suicide. On the following day he purchased bullets, but the plan was not carried out that day, because he did not know how to load the gun. The next morning, a friend loaded it for him and he put it under the front seat of his automobile. At 4:45 p.m., he picked his wife up after she left her place of employment. She had left home drunk in the early morning hours, following an argument two days earlier, and had not returned. They drove to a restaurant in a nearby village and then to the tavern in New Albany, where the shooting occurred. He had been drinking all day and became angry when she refused to leave and cursed him. A man whom he did not know but who was seated at the table, told him to leave her alone and used some profanity. As the defendant took hold of his wife's arm to pull her up from the chair, the stranger pushed his chair back suddenly. The defendant thought that the man was reaching into his back pocket for a gun and was going to attack him. In defense of himself, he drew his gun, cocked it and fired. The shot went wild. His wife started to get up, and he pushed her back into her chair and cocked and fired the gun again so quickly that he didn't even know it. Simultaneously, his wife stood up again and was in the line of fire. As the defendant left the tavern, the man came toward him, so he deliberately fired a third shot, this time at the floor, but it ricocheted and hit the man in the leg.

It is the defendant's contention that, inasmuch as the State's case in chief was predicated entirely upon establish-

ing that the defendant intentionally shot and killed his wife and did not deal with whether or not the wife was killed accidently while the defendant was attempting to exercise a right of self-defense, the State had a burden to rebut directly the self-defense claim, which it failed to do. It is the defendant's claim, therefore, that his motion for a directed verdict at the close of all the evidence should have been sustained.

The test to be applied on appeal of a denied motion for a directed verdict of acquittal is the same as that used in a general review for the sufficiency of the evidence. *Hubble* v. *State*, (1973) 260 Ind. 655, 299 N.E.2d 612. Such a motion can be granted only if there is a total absence of evidence on some essential issue, *Carroll* v. *State*, (1975) 263 Ind. 696, 338 N.E.2d 264; *Birkla* v. *State*, (1975) 263 Ind. 37, 323 N.E.2d 645, Cert. Den. 96 S.Ct. 99; *Hubble* v. *State, supra,* or if the evidence is without conflict and is susceptible to but one inference, which inference is in favor of the accused. *Bash* v. *State*, (1972) 254 Ind. 671, 262 N.E.2d 386; *Hardin* v. *State*, (1964) 246 Ind. 23, 201 N.E.2d 333, Reh. Den. 246 Ind. 23, 202 N.E.2d 164.

When the determination of an issue involves the weight to be given evidence of the credibility of witnesses, it is improper to direct a verdict. *Davis* v. *State*, (1968) 250 Ind. 54, 233 N.E.2d 642; *State* v. *Patsel*, (1960) 240 Ind. 240, 163 N.E.2d 602; *State* v. *Torphy,* (1940) 217 Ind. 383, 28 N.E.2d 70.

"* * * Although the State was required to prove the absence of self defense, Bank v. State, (1971) [257] Ind. [530], 276 N.E.2d 155; Dorak v. State, (1915) 183 Ind. 622, 109 N.E. 771, this burden was carried by its evidence in chief that the defendant was the aggressor and did not, at any time, have any basis to believe that he was in danger of death or bodily harm. Although the defendant introduced evidence of self defense, the State was not required to rebut it, but could rely upon the sufficiency of its evidence in chief where it was opposed to the defendant's evidence upon

the issue. Under such circumstances, the question is for the jury." *Nelson* v. *State*, (1972) 259 Ind. 339, 287 N.E.2d 336.

"When the sufficiency of the evidence is raised as an issue upon appeal, this Court will consider only that evidence of probative value most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. If such evidence and inferences would permit a reasonable trier of fact to find the existence of each element of the crime charged beyond a reasonable doubt, the verdict will not be disturbed." *Baum* v. *State*, (1976) 264 Ind. 421, 345 N.E.2d 831.

One of the elements of a valid claim of self defense is that the defendant was in real danger of death or great bodily harm, or in such apparent danger as caused him, in good faith, to fear death or great bodily harm. *King* v. *State*, (1968) 249 Ind. 699, 234 N.E. 2d 465. The danger need not be actual, but the belief must be in good faith and the reaction must be reasonable.

"* * * A man has a right to act upon appearances of actual and immediate danger, if he sincerely believes such apparent danger exists. The danger need not be actual. It need be only apparent to a reasonable person under the circumstances. The law protects persons who feel compelled to act at such times even though in retrospect it is proved they have erred. The law takes into consideration the surrounding circumstances under which the events took place." *Heglin* v. *State*, (1957) 236 Ind. 350, 140 N.E.2d 98.

In the absence of a real danger, the fear justifying self defense must be based upon appearances which would be similarly perceived by a reasonable man in the same circumstances. Here, there was no evidence that the defendant was in any real danger, and the only evidence in support of his self defense claim was his own testimony. In the State's case in chief, the stranger whom the defendant allegedly perceived to be an attacker testified that he had done nothing to give the defendant any reason to be in fear of him; and several

other witnesses testified that the defendant had displayed his pistol to the group prior to the shooting.

Even if the defendant's credibility had not been in issue, the reasonableness of his actions under the circumstances was an issue of fact upon which reasonable minds might differ and was properly left to the jury's determination.

In a plea of self defense, the trier of fact may reasonably accept or reject the claim. *Martin* v. *State*, (1974) 261 Ind. 492, 306 N.E.2d 93. Although the State is required to prove, beyond a reasonable doubt, that the homicide was not committed in self defense, this is often done by the State, in its case in chief, by presenting evidence that the homicide was committed under circumstances and in such manner as to dispel, beyond a reasonable doubt, a reasonable belief of self defense. When the State has presented such a case, and a defendant follows with evidence that he was acting in self defense, the State may directly rebut such evidence, but it is not required to do so. Alternatively, it may rely upon the strength of its evidence given in chief and the weakness of the defendant's evidence, which includes credibility. In the case before us, the State made such a case, and the jury was warranted in disbelieving the defendant's testimony that he acted out of a good faith fear of death or great bodily harm. It was, therefore, not error to refuse the defendant's motion for a directed verdict.

## ISSUE II

Immediately following the shooting, the defendant fled and was transported by taxi to the tavern in Louisville, Kentucky, a few miles away. He was soon apprehended and placed under arrest by Louisville police, who advised him of the charges against him. This arrest took place at 10:45 p.m. on April 9th. The defendant was held overnight in the Louisville jail and taken into custody by New Albany, Indiana police at 9:35 a.m. on April 10th. At 10:00 a.m., on the 10th, the New Albany police began interrogating the defendant,

and at 12:45 p.m. on the same day, he gave his written and signed statement.

At trial, the defendant objected to the introduction of the aforementioned statement and moved for its suppression upon the grounds that it was not knowingly and voluntarily given. A hearing was had outside the presence of the jury, following which the statement was admitted into evidence. The thrust of the defendant's argument appears to be that the trial court erred in determining that the statement was admissible, in view of its having been taken more than six hours following the initial arrest, citing Ind. Code § 35-5-5-2(1), (3) and Ind. Code § 35-5-5-3 and the "totality of circumstances" test proffered by *Blackburn* v. *Alabama,* (1960) 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242.

The taking of a statement after the defendant has been in custody for more than six hours and without the presence of counsel does not render the same *per se* inadmissible under the statutes cited. Rather, such factors are merely among those required to be taken into consideration by the trial judge in determining the issue of voluntariness. *Montes* v. *State, Farrar* v. *State,* (1975) 263 Ind. 390, 332 N.E.2d 786. In *Nacoff* v. *State,* (1971) 256 Ind. 97, 267 N.E.2d 165, we stated, "The legal standard to be applied in determining whether an accused, who has been properly advised of his rights and has signed a waiver, has voluntarily waived his rights is the same as that used in the pre-*Miranda* coerced confession cases. The question is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises, or other improper influence."

It should be here noted that there has been no claim that the defendant was not properly advised of his constitutional rights.

The evidence adduced at the hearing on voluntariness disclosed that the defendant was advised of the charges against him and was not induced to make a statement by any threats,

coercion or promises and that he was fully advised of his rights and appeared to understand them. Under the *Blackburn* v. *Alabama, supra,* "totality of the circumstances" standard, the trial court clearly committed no error in admitting the statement. That the defendant had been in custody for more than six hours was, under the circumstances of this case, entitled to little weight, if any.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 364 N.E.2d 1019.