**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 15 2014, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**MICHAEL A. WINDHORN**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL A. WINDHORN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 91A02-1312-PC-1074 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE WHITE SUPERIOR COURT
The Honorable Robert B. Mrzlack, Judge
Cause No. 91D01-1208-PC-7

**September 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Michael A. Windhorn appeals the post-conviction court's denial of his petition for post-conviction relief. Windhorn raises a single issue for our review, which we restate as whether the post-conviction court's judgment that Windhorn was not denied the effective assistance of trial counsel is clearly erroneous. We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 19, 2006, the State charged Windhorn with child molesting, as a Class A felony. Windhorn pleaded guilty as charged on January 29, 2007, pursuant to a written plea agreement. The court accepted Windhorn's plea on March 2 and, in accordance with the terms of the plea agreement, the court sentenced Windhorn to twenty-eight years executed, or two years below the advisory sentence for a Class A felony.

On August 24, 2012, Windhorn filed his petition for post-conviction relief. In relevant part, Windhorn alleged that his trial counsel had failed to properly investigate whether Windhorn suffered from a mental illness and whether the State's charge was supported by evidence independent of a confession Windhorn had made to the police shortly after his arrest. As a result of those failures, Windhorn continued, he did not enter into his guilty plea knowingly, voluntarily, and intelligently.

At the ensuing evidentiary hearing, Windhorn called his trial counsel, Brett Gibson, as a witness. Gibson testified that he "specifically remembered" Windhorn because, when Gibson was retained by Windhorn and the two first met, Windhorn "t[old] me that [he was] guilty, that [he] felt very guilty about what had happened, that [he] had

consulted with [his] religious advisers . . . and they advise[d] [him] to tell the police . . . and confess . . . , and [he] said [he] did that." Tr. at 10-11. Gibson further testified: "seldom when I'm first retained does someone tell me, yes, I'm guilty, and I want to get this thing resolved, and I specifically remember that." Id. at 11. Gibson also stated that he has represented numerous clients with varying degrees of mental illness, Windhorn did not inform Gibson of a purported mental illness, Gibson did not observe that Windhorn suffered from an apparent mental illness, and, before he had first met with Windhorn, Windhorn had reported to officers that he did not suffer from a mental illness. And Windhorn's current psychiatrist, Dr. Alfredo Tumbali, testified that Windhorn had never been diagnosed with any mental illness prior to his incarceration in 2007, at which time Windhorn was diagnosed with depression.

Following the evidentiary hearing, the court entered findings of fact and conclusions of law denying Windhorn's petition. In particular, the court found and concluded as follows:

> 13. [Windhorn] presented evidence at the Evidentiary Hearing suggesting that he was suicidal and depressed at the time of his arrest in this case and that[,] after being sentenced and transported to the Indiana Department of Correction, . . . he was diagnosed with bi-polar disorder. Attorney Gibson testified that he reviewed the discovery in this case with [Windhorn], including a transcript of the statement [Windhorn] gave to the police, and that [Windhorn's] statement to the police did not appear to contain any suppression issues. He also testified that he did not observe any evidence of mental illness of [Windhorn]. In addition, Dr. Tumbali testified that his medical records of [Windhorn] showed that no mental condition was diagnosed prior to 2007.
>
> 14. The Court can understand that a defendant might feel suicidal and depressed after being accused of, confessing to, and then being arrested for acts that support a Class A Felony charge of child molesting. [Windhorn] has failed to present evidence sufficient to convince the Court, however,

3

that [his] suicidal ideation and depression rose to a level that interfered with his ability to make a knowing, voluntary, and informed decision to plead guilty. [Windhorn] also failed to present sufficient evidence to convince the Court that[,] at the time the offense was committed, [he] suffered from a mental disease or defect that would support the position that he was unable to appreciate the wrongfulness of his conduct.

15. [Windhorn] has failed to present sufficient evidence to convince the Court that his attorney's advice and counsel fell below the objective standard of reasonableness to suggest that his guilty plea was not made freely, voluntarily and intelligently. In addition, the other grounds alleged by [Windhorn] in his petition were not proved by the evidence presented.

Appellant's App. at 19-20. This appeal ensued.

## DISCUSSION AND DECISION

Windhorn appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review in such appeals is clear:

[The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. See Ind. Post-Conviction Rule 1(5); Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. Timberlake, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Id. If an issue was known and available, but not raised on direct appeal, it is waived. Id. If it was raised on appeal, but decided adversely, it is res judicata. Id.

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. Id. at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. See Timberlake, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. Id.

Lindsey v. State, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), trans. denied.

4

Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "Although we do not defer to the post-conviction court's legal conclusions, '[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made.'" Overstreet v. State, 877 N.E.2d 144, 151 (Ind. 2007) (citation omitted).

Windhorn contends that he was denied the effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution. Specifically, he argues that his trial counsel did not adequately investigate Windhorn's purported mental illness and did not adequately prepare for trial.[1] A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.

The post-conviction court did not err when it rejected Windhorn's assertion that his trial counsel had performed below an objectively reasonable standard. First, Gibson

---

[1] Windhorn states that these errors resulted in him entering a guilty plea that was not made knowingly, voluntarily, and intelligently, but he does not separately argue that his guilty plea is invalid. Our supreme court has noted that whether counsel rendered effective assistance is a distinct question from whether a guilty plea is made knowingly, voluntarily, and intelligently. State v. Moore, 678 N.E.2d 1258, 1266 (Ind. 1997). Thus, we do not interpret these statements on appeal to be a distinct argument that Windhorn's guilty plea is invalid, and any attempt by Windhorn to separately argue the validity of his guilty plea is not supported by cogent reasoning. Ind. Appellate Rule 46(A)(8)(a).

did not fail to investigate Windhorn's alleged mental illness. Gibson testified that he has represented numerous clients with varying degrees of mental illness, that Windhorn did not inform Gibson of a purported mental illness, that Gibson did not observe that Windhorn suffered from an apparent mental illness, and that, before he had even met with Windhorn, Windhorn had reported to officers that he did not suffer from a mental illness. And Windhorn's psychiatrist likewise testified that Windhorn had never been diagnosed with any mental illness prior to his incarceration in 2007, at which time Windhorn was diagnosed with depression. Windhorn presented no evidence to demonstrate that, prior to the entry of his guilty plea, he actually—or even possibly—suffered from a mental illness for Gibson to investigate. As such, the post-conviction court did not err when it concluded that Gibson did not render ineffective assistance on this issue.

We also reject Windhorn's assertion that Gibson failed to adequately prepare for trial. It is well established that counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. Wilkes v. State, 984 N.E.2d 1236, 1245 (Ind. 2013) (citations and quotations omitted). Here, Gibson testified that, when he first met with Windhorn, Windhorn immediately admitted his guilt, acknowledged his confession to the police, and asked Gibson to "get this thing resolved." Tr. at 11. And Gibson further testified that he had reviewed Windhorn's confession and determined that there were no legitimate bases to have that confession suppressed.[2]

---

[2] On appeal, Windhorn asserts that the confession should have been suppressed both because of his mental illness and because he was under a "false arrest." Appellee's Br. at 21. We have already rejected Windhorn's claim that he suffered from a mental illness. Regarding the alleged false arrest, Windhorn did not submit the transcript of his interrogation and confession to the post-conviction court. Thus, Windhorn has not met his burden of proof to show that Gibson was incorrect when Gibson testified

6

In light of these facts, we agree with the State that "it was an entirely reasonable strategy for counsel to focus on negotiating a plea agreement that would limit Windhorn's sentencing exposure." Appellee's Br. at 10. Further, an expedient plea agreement is highly beneficial to the State, as it saves the State the time and expense of a trial, which in turn can make such a plea a mitigating circumstance for the defendant at sentencing. See Trueblood v. State, 715 N.E.2d 1242, 1257 (Ind. 1999). And Gibson successfully negotiated a plea agreement with the State that called for Windhorn to serve an executed term of twenty-eight years, or two years less than the advisory sentence for a Class A felony. See Ind. Code § 35-50-2-4. Gibson's strategy was entirely reasonable in light of Windhorn's admission to him, Windhorn's request to "get this thing resolved," Tr. at 11, and Windhorn's legitimate confession to the police.

We also disagree with Windhorn's assertion that his confession was inadmissible under the corpus delicti rule. As our supreme court has explained, to admit a confession into evidence, there must be "some evidence of probative value aside from the confession" that tends to prove the commission of the crime. Parker v. State, 228 Ind. 1, 7, 88 N.E.2d 556, 558 (1949). The primary purpose of this rule is to reduce the risk of convicting a defendant based on his confession to a crime that did not occur, such as "confessions produced by coercive tactics." Willoughby v. State, 552 N.E.2d 462, 466 (Ind. 1990).

Contrary to Windhorn's assertions, his conviction is supported by more than just his confession to police. Had Windhorn gone to trial, the State also would have

---

that he had reviewed that confession and determined there were no legitimate bases to have the confession suppressed.

7

supported its allegation with the testimony of Windhorn's wife, who first reported the molestation of their child to Child Protective Services after Windhorn had admitted the molestations to her.  And the testimony of Windhorn's wife could either have been voluntary through her own waiver of the spousal privilege, see Glover v. State, 836 N.E.2d 414 (Ind. 2005) (noting that Indiana's spousal privilege "does not bar the spouse from testifying if the spouse chooses to do so"), or the court could have compelled Windhorn's wife to testify under our child protection laws, see Baggett v. State, 514 N.E.2d 1244, 1245 (Ind. 1987) ("the privileged communication between a husband and wife is not a ground for excluding evidence in any judicial proceeding resulting from a report of a child who may be a victim of child abuse or neglect . . . ."); see also I.C. § 31-32-11-1.  Thus, there is no error on these issues.

As Windhorn cannot demonstrate that his counsel rendered assistance that fell below an objectively reasonable standard, Windhorn's claim that he was denied his Sixth Amendment right to counsel must fail, and we need not consider whether any of the alleged errors prejudiced Windhorn.  Hence, we affirm the post-conviction court's denial of Windhorn's petition for post-conviction relief.

Affirmed.

BAILEY, J., and PYLE, J., concur.